# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID SEGHERS, | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-00244 |
| | § | |
| HILTI, INC., | § | |
| Defendant/Counter-Plaintiff. | § | |

## MEMORANDUM AND ORDER

There are two motions currently before the Court in this employment discrimination case. The first motion is Defendant/Counter-Plaintiff Hilti, Inc.'s ("Hilti" or "Defendant"), Motion for Summary Judgment [Doc. # 56] (the "Defendant's Motion") addressing claims asserted by Plaintiff/Counter-Defendant David Seghers ("Plaintiff") in Plaintiff's First Amended Complaint (the "Amended Complaint") [Doc. # 16]. Plaintiff filed a Response [Doc. # 65] and Defendant has filed a Reply [Doc. # 69]. The second motion is Defendant's Objections and Motion to Strike Plaintiff's Summary Judgment Evidence (the "Motion to Strike") [Doc. # 70]. Plaintiff filed a timely response [Doc. # 73], to which Defendant replied [Doc. # 74].

The motions are now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court

concludes that Defendant's Motion should be **granted** and that the Motion to Strike should be **denied as moot**.

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff Seghers filed his original complaint (the "Original Complaint") on January 27, 2016.  Original Complaint [Doc. #1].  In the Original Complaint, Plaintiff alleged interference and retaliation claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, against Defendant, his former employer.  The interference and retaliation claims were predicated on an alleged workplace injury that Plaintiff suffered on January 13, 2004 and his diagnosis with an unspecified "acute medical condition" as of January 22, 2014.

On June 15, 2016, Defendant filed its Original Answer and Counterclaims (the "Original Counterclaim"), asserting various state law claims against Plaintiff relating to his allegedly improper use of a corporate credit card that was issued to him in connection with his employment with Defendant.  Original Answer [Doc. # 10], at ECF 9-13.  Plaintiff answered the Original Counterclaim on July 6, 2016.  Plaintiff/Counter-Defendant's Original Answer to Counterclaims [Doc. # 15].

On August 31, 2016, Plaintiff filed the Amended Complaint.  In the Amended Complaint, Defendant maintained the FMLA interference and retaliation claims he had asserted in the Original Complaint, and added claims for

discrimination, failure to accommodate and retaliation under both the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Texas Labor Code. Like Plaintiff's FMLA claims, his ADA and Texas Labor Code claims in the Amended Complaint are also based on Plaintiff's alleged January 2014 workplace injury and diagnosis with an "acute medical condition."

On September 13, 2016 Defendant filed its Answer and Counterclaims to Plaintiff's First Amended Complaint (the "Counterclaims") responding to Plaintiff's new ADA and Texas Labor Code claims and re-alleging the counterclaims that were raised in the Original Counterclaim. Counterclaims [Doc. # 17].

Also on September 13, 2016, Defendant moved to dismiss (the "Motion to Dismiss) Plaintiff's ADA and Texas Labor Code claims asserted in the Amended Complaint on the grounds that the Court lacked subject matter jurisdiction and that Plaintiff failed to allege a claim upon which relief could be granted. Motion to Dismiss [Doc. # 18]. On November 16, 2016, the Court issued a Memorandum and Order [Doc. # 21], grating the Motion to Dismiss with respect to Plaintiff's Texas Labor Code claims but denying it with respect to Plaintiff's ADA claims.

After the close of discovery, the Defendant's Motion and the Motion to Strike were filed. In Defendant's Motion, Defendant seeks summary judgment on Plaintiff's FMLA and ADA claims, the entirety of the remaining claims in the

3

Amended Complaint. In the Motion to Strike, Defendant asks the Court to disregard certain summary evidence that Plaintiff presented in his response to Defendant's Motion.

### B. Factual Background

The following facts are not subject to genuine dispute for purposes of Defendant's Motion.

Plaintiff began his employment with Defendant as an account manager in May 2011. Plaintiff's duties as an account manager, a role in which he worked from home and was afforded meaningful autonomy, included scheduling customer visits, marketing and selling Defendant's products to existing customers and expanding Defendant's customer base. When Plaintiff began working for Defendant in May 2011 he completed a series of onboarding programs, including multiple trainings pertaining to Defendant's travel and expense policy [Doc. # 56-1], at ECF 8-12.

As part of his employment with Defendant, Plaintiff was issued a corporate credit card to incur work-related expenses. There is no dispute that Defendant's "official" expense reimbursement policy that was in place during Plaintiff's employment with Defendant prohibits using the corporate credit card to buy gift cards [Doc. # 56-1], at ECF 68, 106, nor is there a dispute that over the course of his employment with Defendant, Plaintiff used his corporate credit card to

purchase gift cards on multiple occasions.[1]  There is also no dispute that other

account managers employed by Defendant used his or her corporate credit card

over the same time period to purchase gift cards.[2]  The parties, however, fiercely

disagree on the extent to which Defendant (i) enforced its "no gift card" policy

among its account managers, (ii) reminded Plaintiff and ensured that he was aware

of the "no gift card" policy during the course of his employment with Defendant

and (iii) approved (explicitly or tacitly) Plaintiff's purchases of gift cards with his

corporate credit card throughout his tenure with Defendant.

In May 2013, Plaintiff began reporting to Daniel Schkade, the fifth

supervisor he had in his first two years of working for Defendant.  Although it is

not clear when he began creating a record, Schkade noted several incidents in

October 2013 involving Plaintiff that he found to be problematic or unprofessional

[Doc. # 56-1], at ECF 15-16, 127.  On October 18, 2013, Schkade gave Plaintiff

his performance review.  Schkade rated Plaintiff as "below expectations" in the

areas of growth, differentiation, working with others, developing yourself and

---

[1]     *See* David Seghers 2013 Gift Card Purchase Summary [Doc. # 55-5], at ECF 2;
       Segher's Gift Card Purchase Summary 2011-2014 [Doc. # 55-9], at ECF 2
       (showing over twenty separate purchases of gift cards, the total value of which
       exceeded $2,500).

[2]     *See* Hilti Expense Reports [Doc. # 55-6] (showing purchases of gift cards by
       Defendant's employees Cliff A. Roberts, Tony D. McMenomy, Gregory D.
       Tresler, Christopher Strait, Patrick A Naranjo and Courtney M. Malone).

5

others and living our culture [Doc. # 56-1], at ECF 123-125. Schkade rated Plaintiff as "meets expectations" in the areas of productivity and people. *Id.* For the categories he assessed himself, Plaintiff rated himself as "meets expectations." *Id.*

On December 2, 2013, Plaintiff underwent an outpatient dermatological laser procedure to remove Actinic Keratosis, which Plaintiff describes as precancerous lesions, from his arms and hands. Dr. Paul Friedman, Plaintiff's dermatologist, wrote Plaintiff a note excusing him from work on the date of the procedure. [Doc. # 65-2], at ECF 3. Dr. Friedman's note also stated that Plaintiff would need to stay out of the sun for one to two weeks. *Id.*

On December 10, 2013, Schkade contacted Plaintiff to attempt to arrange a "ride along" between Plaintiff and a new job candidate for the following week [Doc. # 56-1], at ECF 128. Plaintiff informed Schkade he could not attend a ride along then because it involved going outside and he was going to be having a medical procedure that would require him to stay out of the sun. *Id.* There is no evidence that Plaintiff underwent any medical procedures between December 2, 2013 and December 30, 2013. There is also no evidence that Plaintiff discussed his December 2 dermatological procedure with Schkade before December 10.

On December 18, 2013, Plaintiff emailed Defendant's annual meeting team in charge of logistics for Defendant's upcoming company-wide meeting in Las

Vegas and informed them that he "may not be able to the meeting because of a medical procedure" [Doc. # 56-1], at ECF 135. Schkade was not copied on the email. Plaintiff inquired whether he should cancel immediately or "wait to see if it is viable for me to attend." *Id*. That same day, Plaintiff and Schkade had a brief email exchange regarding Plaintiff's purchase of restaurant gift cards [Doc. # 56-1], at ECF 137.

On December 30, 2013, Plaintiff underwent a second outpatient dermatological laser procedure, this time to remove Acitinic Keratosis from his face [Doc. # 65-2], at ECF 29-32. Dr. Friedman wrote Plaintiff a note excusing him from work on the day of the procedure [Doc. # 65-2], at ECF 2. The note also stated that Plaintiff was to avoid the sun for two to three weeks. *Id*. Plaintiff does not contend that either of the dermatological procedures impeded his ability to work [Doc. # 56-1], at ECF 17-20. That same day, Plaintiff also received a response to his December 18 email from Defendant's annual meeting team, who inquired whether Plaintiff still intended to cancel his trip and stated generally "[m]edical reasons [for cancelling] are totally understandable" [Doc. # 56-1], at ECF 135.

On December 31, 2013, Plaintiff emailed Defendant's annual meeting team to officially inform them that he would not be able to attend the upcoming annual meeting in Las Vegas due to a "procedure" he had the previous day. *Id*. Plaintiff

copied Schkade on the email, but had not previously discussed with Schkade the possibility that he would not be able to attend the meeting. Plaintiff did not specify what the procedure was in the email, but he told Schkade in a separate conversation that day that it was the same procedure he was supposed to have had a few weeks prior that made him unavailable to participate in the ride along [Doc. # 56-1], at ECF 128.

On January 7, 2014, Schkade emailed Carolyn Hicks, Defendant's credit card administrator, and asked her to pull some of Plaintiff's expense records because Plaintiff had some "questionable charges on his credit card" [Doc. # 56-1], at ECF 139. Later that day, Schkade emailed Kendra Deaton, one of Defendant's Human Resources representatives, regarding Plaintiff [Doc. # 56-1], at ECF 126. In the email, Schkade characterized Plaintiff's work performance as "the worst case of job neglect I have ever seen." *Id.* Attached to Schkade's email were notes and other emails documenting incidents dating back to October 1, 2013 involving Plaintiff that Schkade believed would justify firing Plaintiff for cause. *Id.* Schkade asked Deaton to "PLEASE help me take care of this." *Id.*

On January 10, 2014, Deaton emailed Plaintiff to request additional information about gift cards he may have given to employees of one of Defendant's municipal government clients [Doc. # 56-1], at ECF 143. Plaintiff

responded to the inquiry on January 13, stating the clients he had given gift cards to were not government employees. *Id.*

On January 13, 2014, two weeks after his December 30 dermatological procedure, Plaintiff claims he injured his back while lifting tools out of his car at a worksite. Plaintiff did not notify Schkade, Deaton or anyone else in Defendant's human resources or legal departments on January 13 that he had suffered a workplace injury.

On the morning of January 14, 2014, Plaintiff emailed Deaton three times; once regarding the recipients of some of the gift cards he had purchased [Doc. # 56-1], at ECF 147, once regarding a meeting [Doc. # 56-1], at ECF 148, and once to provide a doctor's note excusing his absence from the annual meeting in Las Vegas [Doc. # 56-1], at ECF 149. With respect to the missed meeting in Las Vegas, Plaintiff wrote, "[p]lease let me know how you would like this handled as far as the time sheet goes." *Id.* Plaintiff did not notify Deaton or Schkade of the back injury he allegedly had suffered while working the prior day.

On January 15, 2014, Hicks, Deaton and Schkade exchanged emails regarding Plaintiff's historical use of his corporate credit card to purchase gift cards in violation of Defendant's policy [Doc. # 56-1], at ECF 154-155. Consistent with every other communication among Defendant's employees in the

summary judgment record, there is no discussion among Hicks, Deaton and Schkade of Plaintiff's dermatological procedures or of Plaintiff's health generally.

On January 16, 2014, Plaintiff met with Schkade and Deaton at a local restaurant. During the meeting, Plaintiff was informed that he was being suspended, effective immediately, without pay on the grounds that he had violated Defendant's expense policy by purchasing gift cards with his corporate credit card [Doc. # 56-2], at ECF 18.

On January 20, 2014, Deaton emailed Hicks and Schkade at 1:59 p.m. and stated that Defendant was "moving forward with separation of the team member," a reference to Plaintiff [Doc. # 56-1], at ECF 153. Deaton asked Hicks to ensure that Plaintiff's corporate credit card was cancelled, and Hicks confirmed at 2:37 p.m. that Plaintiff's corporate credit card had been "[s]hut down" as of "a few minutes ago." *Id*.

On January 21, 2014, Plaintiff was examined by Dr. Robin Moore, his primary care physician. According to Dr. Moore, Plaintiff "present[ed] with anxiety and hypertension" [Doc. # 56-1], at ECF 160. Under "Past Medical History," Dr. Moore wrote "[r]eviewed, no changes." *Id*. There is no mention of Plaintiff's December 2013 dermatological procedures or precancerous lesions in Dr. Moore's notes from the January 21 exam or in any of the other medical records from Dr. Moore that have been submitted to the Court as summary judgment

evidence [Doc. # 56-1], at ECF 157-179.  There is also no mention of Plaintiff's alleged January 13 back injury.  At some point on January 21, Deaton attempted to call Plaintiff and inform him that his employment was being terminated, but she was unsuccessful in reaching him [Doc. # 56-1], at ECF 182.

On the morning of January 22, 2014, Deaton emailed Plaintiff and requested that he call her "as soon as possible" [Doc. # 56-11], at ECF 2.  Deaton noted that she had "been attempting to reach" Plaintiff via his personal phone number.  *Id*.  Plaintiff returned Deaton's call and left a message that he would call back that afternoon when he was available" [Doc. # 56-1], at ECF 182.  After not receiving another call from Plaintiff, Deaton emailed Plaintiff at 4:50 p.m. stating that "[i]t is imperative that we speak soon.  Please call me back first thing in the morning." *Id*.

On the afternoon of January 22, Plaintiff underwent a medical examination by Dr. Jonathan Lee, an orthopedist.  Plaintiff's "chief complaint" was low back pain and radiating pain that resulted from an alleged onsite work injury on January 13, 2014 [Doc. # 56-1], at ECF 180.  According to Dr. Lee, Plaintiff complained of severe pain, which he described as "sharp, stabbing and aching," and constant since his injury on January 13.  *Id*.  There is no mention of Plaintiff's December

2013 dermatological procedures in Dr. Lee's note, nor is there any mention of any issues related to Plaintiff's skin.[3]

Also on January 22, and subsequent to his examination by Dr. Lee, Plaintiff faxed and emailed two doctors' notes to Deaton that indicated that Plaintiff would need to miss several weeks of work. The first note was from Dr. Lee, dated the same day, which stated that due to lumbar pain, Plaintiff would need to miss three weeks of work [Doc. # 56-1], at ECF 184. In the accompanying fax cover sheet, Plaintiff wrote that the reason Dr. Lee was keeping him out of work was "due to an injury I sustained while working on a site 1/13/2014" [Doc. # 56-1], at ECF 183. There is no dispute that Plaintiff's fax on January 22, 2014 was the first time he notified Defendant that he had allegedly suffered a workplace injury on January 13 [Doc. # 56-1], at ECF 43-50.

The second note was from Dr. Moore, dated January 21, 2014, which stated that Plaintiff had "recently developed an acute medical issue" and would need to both miss two weeks of work and maintain a low stress environment [Doc. # 56-1], at ECF 186. Dr. Moore did not provide any specificity as to what the "acute medical issue" was. *Id.* Plaintiff wrote on the cover sheet that Dr. Moore had put

---

[3]     *See* Medical Notes of Dr. Jonathan Lee [Doc. # 56-1], at ECF 180-181 (noting under "Integumentary" that "[t]he patient denies any rashes, skin ulcers, lumps or psoriasis" and under "Skin" that "[t]here are no rashes, ulcerations or lesions in the regions examined.").

him "on leave due to a medical condition," but provided no specificity as to what the "medical condition" was. *Id*.

On the morning of January 23, 2014, Deaton again called Plaintiff. Plaintiff responded to Deaton later that day via email [Doc. # 56-1], at ECF 188. After telling Deaton that he did not appreciate the "threatening voicemails" that she had left him earlier that day, Plaintiff asked Deaton to "[p]lease advise how you would like to proceed with paperwork." *Id*. Plaintiff also stated that he would prefer to keep all communication between the two "in written form." *Id*.

On the morning of January 24, 2014, Deaton emailed Plaintiff to provide him the contact information for Susan Johnson, an employee of Defendant who would assist Plaintiff with his workplace injury claim [Doc. # 56-1], at ECF 187. Deaton again emphasized her several attempts to reach Plaintiff by phone and again asked that he return her call. *Id*.

On January 28, 2014, Deaton emailed Plaintiff at 9:10 a.m. informing him that his employment with Defendant had been terminated effective January 16, 2014 [Doc. # 56-1], at ECF 194. Deaton noted in her email that she would have preferred to "handle this matter over the phone," and detailed her unsuccessful attempts to get in touch with Plaintiff since January 21, 2014. *Id*. Deaton also wrote that Plaintiff's termination would "not affect your rights to file a worker's

compensation claim," and encouraged Plaintiff to reach out to Johnson to file a claim if he had not done so already. *Id*.

Fifteen minutes later, at 9:25 a.m., Plaintiff emailed Deaton regarding "medical leave" [Doc. # 56-12], at ECF 2. Plaintiff reiterated that he was under medical supervision and requested again that Deaton email to him "any and all paperwork, including your FMLA forms, necessary to complete for medical leave." *Id*. Plaintiff did not acknowledge Deaton's termination email. Later that same day, Plaintiff also reached out to Johnson to initiate a workers compensation claim related to his alleged January 13 injury [Doc. # 56-1], at ECF 189-190.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp*., 477 U.S. at 322–23; *Weaver v.*

*CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

III.   <u>**ANALYSIS**</u>

Plaintiff asserts four causes of action in the Amended Complaint, one relating to the FMLA and three related to the ADA. Defendant has moved for summary judgment on all four causes of action. The Court addresses Defendant's Motion with respect to the FMLA claims and the ADA claims in turn.

A.   <u>**Plaintiff Has Abandoned His FMLA Claims**</u>

Defendant dedicated a significant portion of its summary judgment briefing to address Plaintiff's FMLA interference and retaliation claims. Defendant's Motion [Doc. # 56], at ECF 26-41. In his response to Defendant's Motion, Plaintiff did not address any of the legal arguments or summary judgment evidence Defendant presented with respect to Plaintiff's FMLA claims. *See generally* Plaintiff's Response [Doc. # 65]. Having failed to counter Defendant's arguments and evidence against his FMLA claims, the Court concludes that Plaintiff has abandoned his FMLA claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (holding failure to pursue claim beyond complaint constituted

abandonment); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (same);

*Criner v. Texas--New Mexico Power Co.*, 470 F. App'x 364, 366 (5th Cir. 2012)

(affirming district court finding that Plaintiff had abandoned disparate treatment

claims "because [the plaintiff] did not address them in her response to the

[defendant]'s motion for summary judgment"); *Scales v. Slater*, 181 F.3d 703, 708

n.5 (5th Cir. 1999) (noting that the plaintiff abandoned her disparate impact claim

in district court when she neither contested defendant's arguments for dismissal of

that claim nor demonstrated that her statistical evidence demonstrated pretext); *see*

*also* Fed. R. Civ. P. 56(a) ("[a] party asserting that a fact cannot be or is genuinely

disputed must support the assertion by . . . citing to particular parts of materials in

the record."). As such, Defendant's Motion is **granted** with respect to Plaintiff's

FMLA claims.[4]

---

[4]    In the event that Plaintiff had not elected to abandon his FMLA claims, dismissal would have been warranted on the merits. There is no dispute, genuine or otherwise, that Defendant did not become aware of Plaintiff's alleged January 13, 2014 workplace injury or amorphous "acute medical condition" until Plaintiff faxed and emailed notes from Dr. Lee and Dr. Moore to Deaton on January 22, 2014. There is also no genuine dispute that Defendant decided to terminate Plaintiff, and began implementing that decision, no later than January 20, 2014, two days before Plaintiff gave Defendant notice of any alleged January 13 injury or "acute medical condition," or Plaintiff's intent to request medical leave. Defendant also attempted to reach Plaintiff on January 21, 2014 and on January 22, 2014, before Plaintiff faxed and emailed the two doctor notes to Deaton, to inform him that his employment was being terminated. In short, the summary judgment evidence is undisputed that there was no causal relationship between Plaintiff's alleged workplace injury or "acute medical condition" (which, even after discovery, remains unspecified) or his request for medical leave, on the other

(continued…)

**B.** **Plaintiff Has Waived The Right to Assert Any Claims Based on the December 2013 Dermatological Procedures**

Defendant next asserts that any of Plaintiff's FMLA or ADA claims predicated on his December 2013 dermatological procedures should be disregarded because such claims are not presented in the Amended Complaint. Defendant's Motion [Doc. # 56], at ECF 25-26. In Plaintiff's Response, Plaintiff contends that such claims are properly before the Court because Defendant had sufficient notice

---

(continued…)
hand, and Defendant's decision to terminate Plaintiff, which predated any knowledge Defendant had of Plaintiff's intentions or alleged conditions. Plaintiff has produced no evidence that he was entitled to FMLA leave when his request for leave came after Defendant had decided to terminate him for entirely unrelated reasons. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (holding that employers "need not suspend previously planned" employment actions upon learning of an employment-related claim and that an employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Any FMLA claims Plaintiff may have asserted based on his December 2013 dermatological procedures would also fail as a matter of law. Assuming such claims are even properly before the Court, there is no evidence that Plaintiff ever requested FMLA leave in connection with his December 2013 dermatological procedures. Additionally, Plaintiff's December 2013 dermatological procedures, and any medical leave the might necessitate, were entirely foreseeable and not the results of an emergency. "When the need for FMLA leave is foreseeable, an employee must provide her employer with no less than 30 days advance notice." *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 975 (5th Cir. 1998). Plaintiff never provided Defendant with the requisite advanced notice in connection with any actual or arguable request for FMLA leave based on his December 2013 dermatological procedures, and as such, any FMLA claims based on those procedures fail as a matter of law.

that his December 2013 dermatological procedures were the basis of his ADA claims.  The Court concludes that Defendant's argument has merit.

Plaintiff filed the Original Complaint on January 27, 2016 alleging FMLA interference and retaliation.  There are no allegations whatsoever in the Original Complaint that pertain to Plaintiff's 2013 dermatological procedures or any issues with his skin.  The underlying "medical conditions" on which Plaintiff relies in the Original Complaint are his alleged January 13, 2014 workplace injury and his "acute medical condition."  Original Complaint [Doc. # 1], ¶¶ 11, 15.  The only medical information that Plaintiff alleges he provided Defendant regarding his allegedly serious health conditions were the notes from Dr. Lee and Dr. Moore, *Id.* at ¶ 15, neither of which address Plaintiff's December 2013 dermatological procedures.  The Original Complaint does not provide Defendant with any notice that Plaintiff would be pursuing any cause of action based on Plaintiff's December 2013 dermatological procedures.

The same is true of the Amended Complaint, which was filed over seven months later on August 31, 2016.  In the Amended Complaint, Plaintiff did not add to or amend the factual basis for his claims.  Instead of amending the factual basis for his claims, Plaintiff added new disability-related causes of action under the ADA and the Texas Labor Code.  There are no allegations whatsoever in the Amended Complaint that pertain to Plaintiff's 2013 dermatological procedures or

any issues with his skin.  With respect to each of the new claims in the Amended Complaint, Plaintiff specifically alleged that "[i]n January 2014, Plaintiff was diagnosed with medical conditions clearly constituting disabilities under the ADA and the Texas Labor Code and Defendant was notified of this."[5]  Amended Complaint [Doc. # 16], ¶¶ 29, 36, 45.  As with the Original Complaint, the Amended Complaint does not state, or even suggest, that Defendant would be pursuing any cause of action based on Plaintiff's December 2013 dermatological procedures.

In this case, Plaintiff raised his claim that Defendant violated the ADA in connection with Plaintiff's December 2013 dermatological procedures for the first time in response to Defendant's Motion.  The Fifth Circuit has "made clear that '[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Fennell v.*

---

[5]     Insofar as Plaintiff would argue that one of the "medical conditions" being referred to is his skin condition, or that there is a genuine dispute as to that fact, that argument is without merit.  The summary judgment evidence does not contain any medical records from Dr. Friedman that are dated later than December 30, 2013.  There is also no evidence that Plaintiff saw Dr. Friedman between his December 30, 2013 procedure and January 28, 2014, when Defendant officially notified him of his termination.  The only evidence of diagnosis in the record that occurred in January 2014 are the notes from Dr. Lee and Dr. Moore, which are referred to in both the Original and Amended Complaints.  There is no evidence that either doctor was even aware of the December 2013 dermatological procedures.  Moreover, there is no evidence that Plaintiff's "acute medical condition," was something other than hypertension and/or anxiety, the alleged conditions he actually sought treatment for from Dr. Moore.

*Marion Indep. Sch. Dist.*, 804 F.3d 398, 415–16 (5th Cir. 2015) (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) ("a district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard."). This is consistent with the Supreme Court's guidance that a properly pleaded complaint must give "fair notice of what the claim is *and the grounds upon which it rests*." *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009) (emphasis added).

The Fifth Circuit's admonition in *Fennell* plainly applies in this case, where claims for various violations of the ADA were pled, but the factual basis for those claims that Plaintiff now relies on was not. In *Fennell*, the plaintiffs asserted various discrimination claims against a school district and two of its employees based on a series of allegedly race-based incidents, one of which occurred on a softball field. The operative complaint in that case alleged equal protection claims under 42 U.S.C. § 1983 against the two employee defendants. After having their entire case dismissed on summary judgment, the plaintiffs appealed to the Fifth Circuit, and argued that as to one of the employee defendants, summary judgment was inappropriate based on what occurred during the softball field incident. The Fifth Circuit, however, held that the plaintiffs had "waived any claim" against the

employee defendant premised on the softball field incident because such claim was asserted for the first time in response to a motion for summary judgment. *Fennell*, 804 F.3d at 415.

In explaining why the claim was waived, the Fifth Circuit stated that "[t]he Second Amended Complaint clearly alleges that the relevant incident underlying this claim was [employee defendant]'s failure to override [other employee defendant]'s punishment arising from [a different] incident involving [one of the plaintiffs], not the softball field altercation involving [that same plaintiff]." *Id*. The Fifth Circuit went on to say that "[a]lthough the Second Amended Complaint alleges facts relating to [the other employee defendant]'s handling of the softball field altercation, it includes no allegations against [employee defendant] relating to his investigation and report on the [softball field] altercation." *Id*. Thus, although the plaintiffs in *Fennell* had pled an equal protection claim against the employee defendants, they were not permitted to argue a new factual predicate for that claim for the first time at summary judgment when that new factual predicate was not adequately alleged in the operative complaint. *See also Derrick Petroleum Servs. v. PLS, Inc.,* No. CV H-14-1520, 2017 WL 3456920, at *12 n.1 (S.D. Tex. Aug. 11, 2017) (declining to consider additional alleged misrepresentations in connection with underlying fraud claim when those misrepresentations were raised for the first time in response to summary judgment and not alleged in the amended

complaint); *GE Betz Inc. v. Moffitt-Johnson*, No. CV H-13-0459, 2014 WL 12596523, at *20 n.3 (S.D. Tex. June 6, 2014) (declining to consider second theory of liability on existing tortious interference claim raised for the first time on summary judgment when the underlying counterclaim "plainly articulate[d] a sole basis" for the tortious interference claim).

The facts here present an even more compelling case for waiver than those the Fifth Circuit found sufficient in *Fennell*. Unlike in *Fennell* were there were at least some allegations in the operative complaint relating to the "softball field incident," there are no allegations at all in the Amended Complaint that relate, even tangentially, to Plaintiff's December 2013 dermatological procedures.

Plaintiff's arguments that the Court should consider his dermatological-based ADA claims despite his failure to allege them in the Amended Complaint (or the Original Complaint) are unavailing. Plaintiff first argues that "the Supreme Court has already settled that when a party lacks sufficient information, as Defendant claims in its summary judgment motion, the appropriate recourse is a 12(e) Motion for a More Definitive Statement." Plaintiff's Response [Doc. # 65], at ECF 32. This argument misses the mark. By its plain language, Rule 12(e) of the Federal Rules of Civil Procedure applies to "a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). The issue in this case is not

that the Amended Complaint was vague or ambiguous such that Defendant could not reasonably prepare a response. To the contrary, the Amended Complaint is quite clear that Plaintiff's ADA claims are based solely on his alleged worksite injury on January 13, 2014 and the "acute medical condition" he developed as of January 22, 2014. The issue here is that the Amended Complaint does not address, in any respect, Plaintiff's December 2013 dermatological procedures. Rule 12(e) is "a mechanism to enforce the minimum requirements of notice pleading," *Brown v. Whitcraft*, No. CIV.A.3:08CV0186-D, 2008 WL 2066929, at *2 (N.D. Tex. May 15, 2008), not a means by which a defendant is expected to tease out entirely new and unplead claims from a plaintiff. Consequently, the fact that Defendant did not make a Rule 12(e) motion in this case does not excuse Plaintiff's failure to plead any dermatological-based claims in the Amended Complaint.

Plaintiff also asserts that "Defendant cannot claim it was not on notice about the grounds for Plaintiff's ADA claims when Plaintiff very clearly stated those grounds in his EEOC Charge of Discrimination dated July 24, 2014," a document that Defendant produced in discovery in this case. Plaintiff's Response [Doc. # 65], at ECF 33. This argument is not persuasive. First, it is the complaint, not an EEOC charge, which actually establishes the claims that are at issue in a lawsuit. While a complaint may be based on, and perhaps identical to, an EEOC charge, a defendant is obligated to respond to what is in the complaint actually

filed in court, not an EEOC charge filed before an administrative agency that predates the Original Complaint by a year and a half.

Furthermore, an EEOC charge establishes the outer limits of how broad a discrimination lawsuit filed in federal court can be. *See Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 710 (E.D. La. 2013) ("Consequently, the Court finds that the scope of its inquiry in an ADA action, like in a Title VII action, should be limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (citing *Young v. City of Houston*, 906 F.2d 177, 179 n.1 (5th Cir. 1990); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (internal quotation marks omitted). There is no requirement, however, that a complaint in a discrimination lawsuit filed in federal court be as broad as the underlying EEOC charge. Plaintiff had readily available means, such as incorporating the contents of his EEOC charge into the Amended Complaint by reference or attaching his EEOC charge to the Amended Complaint, to ensure that his claims in this case covered the entire breadth of his EEOC charge. Plaintiff did not take either of those actions in this case. Instead, Plaintiff chose not once, but twice, to specifically allege harms based on facts and medical conditions that have no connection to his December 2013 dermatological procedures. Therefore, the fact that Plaintiff raised his dermatological procedures in his EEOC charge does

not exempt him from his obligation to provide Defendant fair notice of the grounds

for his claim in this lawsuit by raising that issue in the Amended Complaint.[6]

---

[6]    Since filing the Amended Complaint, Plaintiff has not sought leave to amend the Amended Complaint, even after Defendant in its summary judgment motion raised the issue of Plaintiff's failure to plead any dermatological-based ADA claims. The Court declines, *sua sponte*, to view Plaintiff's new arguments as a motion to amend.  "Under certain compelling circumstances, [the Fifth Circuit has] required district courts to construe a new claim raised in opposition to summary judgment as a motion to amend." *Harry v. Dallas Hous. Auth.*, 662 F. App'x 263, 270 (5th Cir. 2016).  The "compelling circumstances" referred to by the Fifth Circuit in *Harry* include a plaintiff appearing *pro se* and serious errors by plaintiff's counsel. *Id.*  There are no such compelling circumstances in this case.

Even if the Court were to construe Plaintiff to have sought leave to amend, the Court would deny that request.  "The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)).  At this stage of the litigation, an amendment to add Plaintiff's dermatological based claim would result in undue delay.  Plaintiff has not asserted a justification for his failure to meaningfully raise these ADA claims earlier.  Moreover, discovery in this case was completed in June, 2017, Minute Order [Doc. # 46], at ECF 1.

Further, allowing Plaintiff again to amend his claims would unfairly prejudice Defendant unless discovery was reopened.  This is unacceptable given that this case has been pending for nearly two years and is on the eve of trial.  Although there is some limited summary judgment evidence relating to Plaintiff's dermatological-issues, Defendant did not have a fair opportunity to conduct discovery on those issues.  *See also Harry*, 662 F. App'x at 270 (finding district court did not abuse its discretion in determining that claim that was asserted in original complaint, dropped in the amended complaint, and re-asserted in response to summary judgment motion was not properly before the court when discovery had ended and "there was no apparent excuse for re-raising the abandoned claim other than as a maneuver to avoid summary judgment.")

In sum, Plaintiff waived any dermatological-based ADA claims by failing to plead them in the Amended Complaint or during discovery and only raising them in response to Defendant's Motion. Defendant's Motion is **granted** with respect to all of Plaintiff's dermatological-based ADA claims. [7]

---

[7] Had Plaintiff timely asserted his dermatological-based ADA claims, they would have failed. Plaintiff has not raised a genuine issue of fact that he is disabled or regarded as disabled within the meaning of the ADA. *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009) (Under the ADA a "disability" is: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."). Plaintiff's dermatological condition or procedures were not disabling as a matter of law and did not substantially limit a major life activity. "In determining whether an individual is substantially limited in a major life activity, the EEOC advises that courts should consider: (i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Chevron Phillips Chem. Co., LP*, 570 F.3d at 614–615. Plaintiff's proffered limitation is that following his dermatological procedures he was unable to work outdoors. Response [Doc. # 65], at ECF 18-19. There is no evidence that Plaintiff's inability to work outdoors ever amounted to anything more than a temporary anomaly of very limited duration. Plaintiff cites no evidence that he was unable to work outside for more than two weeks after each of his procedures, or that he experienced any type of atypical recovery or severe reaction to the procedures. Nor is there any evidence that any outpatient procedures he underwent was expected to have, or have had, any long-term or permanent effects on his ability to work outside. There is also no evidence that Plaintiff had a recurrence of Actinic Keratosis or that such a recurrence is likely. Based on the summary judgment evidence, Plaintiff does not raise a genuine dispute as to whether he was substantially limited in a major life activity within the meaning of the ADA as a result of his dermatological issues.

Plaintiff's assertion that Defendant regarded him as disabled also fails. Defendant excused Plaintiff from participating in the ride along based on his representation that he needed to stay out of the sun for a few days and excused him from attending the annual meeting in Las Vegas based on his statement that he had a

(continued…)

### C.   Plaintiff Has Abandoned His Remaining ADA Claims

Plaintiff's Response to Defendant's Motion rests entirely on the argument that his dermatological conditions constituted a disability under the ADA.   As stated above, Plaintiff's dermatological-based ADA claims are not properly before the Court, as Plaintiff waived those arguments by not pleading them in the Amended Complaint.   Plaintiff's only potential remaining ADA claims are those based on his alleged January 2014 jobsite injury or unspecified "acute medical condition."   Plaintiff, however, abandoned these claims by not responding to the arguments or evidence that Defendant presented in opposition to these claims in its motion for summary judgment.   Therefore, Defendant's Motion is **granted** with respect to all of Plaintiff's remaining ADA claims.[8]

---

(continued…)
"procedure" the preceding day.   There is no evidence that Defendant has otherwise, in any way, limited Plaintiff's work responsibilities or hindered his ability to return to work after his dermatological procedures.   Plaintiff himself testified in his deposition that he was able to work from home without issue after his dermatological procedures and Defendant was not even aware Plaintiff had either of his procedures.

[8]   Had Plaintiff not elected to abandon these ADA claims, the Court nevertheless would have granted Defendant's Motion with respect to those claims on the merits for the same reasons that Plaintiff's FMLA claims fail.   There is no genuine dispute that Defendant learned of Plaintiff's alleged worksite injury and "acute medical condition" until after Defendant had made the decision to terminate his employment.   Consequently, these medical conditions could not have served as the basis for Defendant's decision to take any adverse employment action against Plaintiff, including terminating his employment.

### D.     Defendant's Motion to Strike is Moot

Defendant, in its Motion to Strike, asks the Court to disregard evidence that Plaintiff has presented in opposition to Defendant's Motion on the grounds that the evidence fails to satisfy various procedural and evidentiary standards. Motion to Strike [Doc. # 70]. The evidence Defendant challenges has no bearing on the Court's conclusion that that Defendant's Motion should be granted in its entirety. The Court would reach the same conclusion irrespective of whether the challenged evidence is admissible. Therefore, the Motion to Strike is **denied as moot**.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 56] is **GRANTED**. It is further

**ORDERED** that Defendant's Motion to Strike [Doc. # 70] is **DENIED**.

SIGNED at Houston, Texas, this ͟1͟7͟ day of **October, 2017**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2016\0244MSJ.docx  171017.0946